In the Matter of the Estate of JOSEPHINE PATTERSON (otherwise known as JOSEPHINE West), Deceased.

*Sections 2681 and 2481 of the Code of Civil Procedure — relief which may be granted thereunder — limited by the prayer of the petition — a decree on a final accounting opened without revoking the letters of administration.*

A proceeding to vacate letters of administration is authorized by section 2681 of the Code of Civil Procedure, and a proceeding to vacate a final accounting is authorized by section 2481 thereof; the relief which may be granted under these sections in proceedings instituted pursuant to them is not similar.

Where a petition for a final accounting made by an administrator alleged that the only person interested in the estate of the decedent as husband, next of kin, or otherwise, was the petitioner, the husband of the deceased, and such allegation was untrue, and the petitioner was not the husband of the deceased, there is a sufficient cause for vacating the proceeding for an accounting under section 2481 of the Code of Civil Procedure, and the Surrogate's Court is not precluded on the final accounting from adjudging such allegation to be untrue by the fact that the petition on which the letters of administration were granted contained a similar allegation. In a proper case it may, notwithstanding such allegation in the petition for letters of administration, upon the application of a person not cited upon the application for letters or upon the final accounting, vacate the decree made upon such accounting.

No person can be deprived of his property without due process of law, and when a court decides a question adversely to the interests of a person who ought to have been a party to the action or proceeding, but was not, and is not a privy of a party, the judgment obtained is not conclusive upon such person, and he may attack the same collaterally.

In case the petition in a proceeding in a Surrogate's Court contains facts entitling the petitioner to two dissimiliar kinds of relief, and concludes with a prayer that he have one kind and for such other and further relief, etc., no relief except that prayed for and such as is consistent therewith can be granted.

On February 27, 1889, William H. Patterson filed a petition in the Surrogate's Court alleging that he was the husband of a decedent and her only next of kin, and prayed that letters of administration be granted to him upon her estate. Letters of administration were accordingly granted to him and he took upon himself the execution of the trust and filed an inventory of the estate, which consisted entirely of personalty. A notice to creditors was duly published, and thereafter Patterson filed a petition in the Surrogate's Court praying that his account as administrator be settled, and on the same day a decree was entered judicially settling his account and directing the distribution of the assets of the estate in his hands.

Thereafter a sister of the intestate filed a petition in the Surrogate's Court setting forth the facts above stated and further alleging that the intestate died unmarried, and that the final account was filed and the decree settling the same was entered without notice to the petitioner.

The relief prayed for was as follows: "Your petitioner, therefore, prays that an order be entered herein vacating and setting aside the decree entered herein on the 21st day of March, 1890, and directing the said William H. Patterson, the administrator of said estate, to pay over to your petitioner and her mother and brother all of the funds of said estate which have come into his possession or under his control as such administrator, and why she should not have such other and further relief, or both, as to the court may seem just and proper. And your petitioner will ever pray."

*Held,* that the Surrogate's Court was not authorized in such proceeding to vacate its order granting letters of administration;

That it had power, if the facts authorized the exercise thereof, to open the decree settling the final account without first revoking the letters of administration.

APPEAL by William H. Patterson from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of the New York County Surrogate's Court on the 3d day of November, 1892, confirming the report of a referee and revoking, setting aside and annulling the letters of administration granted to him and the decree passing and settling his accounts as administrator, with costs against the said William H. Patterson personally.

Susanna Clark was born in Meriden, Ct., in 1845, and at an early age removed to the city of New York and assumed the name of

Josephine or " Joe" West, and at one time she assumed the name
of Mrs. William H. Patterson, had her cards so printed and for a
short time ran a house on Thirteenth street under that name.    For
more than twenty years she was the proprietress of assignation
houses in the city of New York, during which period one William
H. Patterson lived with her as husband or companion, but whether
they intermarried was the question of fact tried in the court below.
It was found that they never married.    On the 23d of February,
1889, she died intestate at the city of New York, leaving her sur-
viving Mary Clark, mother, Christopher C. Clark, brother, and
Mary J. Mosher, sister, but left no descendants.    On the 27th of
February, 1889, William H. Patterson filed a petition in the
Surrogate's Court alleging that he was the decedent's husband and
only next of kin, and prayed that letters of administration might
be granted to him upon her estate.    February 28, 1889, the mother
and brother renounced all of their rights to administration on the
estate.    The sister, Mary J. Mosher, did not renounce her right, if
any she had.    On the 4th of March, 1889, letters of administration
were granted to William H. Patterson, who took upon himself the
execution of the trust, and filed an inventory of the estate showing
that it amounted to $5,892.30, all in personalty.    The intestate left
no real estate.    Pursuant to an order of the Surrogate's Court, a
notice to creditors to present their claims at No. 160 Broadway on or
before March 19, 1890, was duly published.    March 21, 1890,
William H. Patterson filed a petition in the Surrogate's Court pray-
ing that his account as administrator be judicially settled, and on
the same day a decree was entered judicially settling the account by
which it appeared that after the payment of the debts of the intes-
tate and all the expenses of administration and $4,200 previously
paid by the administrator to himself as husband, there was in his
hands $2,132.30, cash in bank, and jewelry of the value of $505,
making $2,637.30, and directing that this sum be distributed accord-
ing to law.    On the 18th of September, 1890, Mary J. Mosher, a
sister of the intestate, filed a petition in the Surrogate's Court set-
ting forth the facts before stated, and alleging that the intestate
died unmarried; that the allegations contained in the petition of
William H. Patterson for letters and in the petition for a judicial
accounting, that he was intestate's husband, were false, and that she

FIRST DEPARTMENT, JUNE TERM, 1894.            [Vol. 79.

died unmarried. It was also alleged that the final account was filed and the decree judicially settling it was entered without notice to the petitioner. The petition concludes with the following prayer:

"Your petitioner, therefore, prays that an order be entered herein vacating and setting aside the decree entered herein on the 21st day of March, 1890, and directing the said William H. Patterson, the administrator of said estate, to pay over to your petitioner and her mother and brother all of the funds of said estate which have come into his possession or under his control as such administrator, and why she should not have such other and further relief, or both, as to the court may seem just and proper.

"And your petitioner will ever pray."

On the 9th of September, 1890, the Surrogate's Court entered an order by which it was:

"Ordered, that William H. Patterson, the administrator of said deceased, show cause before me, at a Surrogate's Court to be held in the city and county of New York on the 7th day of October, 1890, at 11 o'clock in the forenoon of said day, or as soon thereafter as counsel can be heard, why the decree entered herein on the accounting of said administrator on the 21st day of March, 1890, should not be vacated and set aside, and why said administrator should not pay to said petitioner and her mother and brother, who are claimed to be the only heirs at law and next of kin of said deceased, all of the proceeds of said estate, and why said petitioner should not have such other and further relief in the premises as shall be just and proper."

On the 10th of November, 1890, Patterson appeared in the Surrogate's Court and filed a verified answer to the petition, denying some of the allegations and admitting others, and with the answer he filed an affidavit of Charles H. Beckett, verified November 10, 1890. On February 17, 1891, an order was granted and entered, reciting that a motion had been made "to vacate and set aside the decree entered herein on the 21st day of March, 1890, settling the account of William H. Patterson as administrator," and concluding as follows:

"Ordered, that it be referred to Robert Bonynge, Esq., counselor at law, who is hereby appointed referee for that purpose, to take proof of the matters alleged in said petition and affidavits, and to report the same with his opinion to the surrogate."

On the 6th of February, 1892, the referee reported: "I am of the opinion that the decedent and respondent were never married, that the respondent was not the husband of the decedent, and that, therefore, letters of administration issued to respondent should be revoked." This report, and the evidence accompanying it, were filed, upon which the Surrogate's Court made findings of fact sustaining the report and conclusions of law, on which, November 3, 1893, a decree was entered by which it was " ordered and decreed that the report of said referee be and the same hereby is in all respects confirmed, and the letters of administration on the goods, chattels, credits and estate of the above-named decedent granted to the respondent William H. Patterson on the 4th day of March, 1889, be and the same hereby are revoked, and the said order and decree entered and filed in the office of said clerk on the 21st day of March, 1890, passing and settling the accounts of said William H. Patterson, as such administrator, be and the same hereby is vacated, annulled, set aside and made of no force or effect."

By the decree Patterson was personally charged with the costs and expenses of the proceeding, which were taxed and allowed at $747.75. From this decree this appeal is taken.

*Booraem, Hamilton & Becket*, for William H. Patterson, appellant.

*Charles Blandy*, for the petitioner, respondent.

FOLLETT, J. :

A single issue of fact was litigated in the court below — whether the intestate and William H. Patterson were husband and wife. And it was found that they were not, which result was justified by the evidence, and the finding is affirmed. This issue was necessarily tried and determined in order to ascertain whether Patterson was entitled to the avails of the estate, or whether the mother, brother and sister of the intestate were entitled to the avails. Two questions of law arise on the record : (1) Whether in this proceeding the Surrogate's Court was authorized to revoke the letters of administration. (2) Whether, without revoking those letters, the Surrogate's Court could determine that Patterson and the intestate were not married, and that the mother, brother and sister of the intestate were entitled to the avails of the estate.

FIRST DEPARTMENT, JUNE TERM, 1894.          [Vol. 79.

By section 2472 of the Code of Civil Procedure jurisdiction is conferred on Surrogates' Courts to revoke letters of administration, but the last clause of this section provides : " This jurisdiction must be exercised in the cases and in the manner prescribed by statute." Sections 2684 and 2689 provide that letters may be revoked in certain cases, which are not germane to the case in hand. By section 2691 the Surrogate's Court is authorized to vacate letters of administration on its own motion and without a petition in four cases, but the cause for which the letters were vacated in this case is not one of the four. Under the facts found, the only section under which these letters could be revoked is 2685, which provides that a " person interested in the estate of a decedent may present to the Surrogate's Court, from which letters were issued to an  *  *  *  administrator, a written petition, duly verified, praying for a decree revoking those letters ; and that the  *  *  *  administrator may be cited to show cause why a decree should not be made accordingly." The section then specifies the causes for which letters may be revoked, and among them is the following :

" 4. Where the grant of his letters was obtained by a false suggestion of a material fact."

Section 2686 prescribes how proceedings shall be instituted for the revocation of letters for causes specified in section 2685, to wit :

" § 2686. A petition, presented as prescribed in the last section, must set forth the facts and circumstances showing that the case is one of those therein specified. Upon proof by affidavit or oral testimony satisfactory to the surrogate of the truth of the allegations contained in the petition, a citation must be issued according to the prayer thereof.  *  *  * "

By reference to the petition it will be observed that the petitioner did not pray for a decree revoking the letters, but simply for an order vacating the decree entered March 21, 1890, on the final accounting, and that the administrator pay to the mother, brother and sister the net avails of the estate. The order which was entered upon the petition, the answer, and the affidavit filed in connection therewith, required the administrator to show cause why the decree entered March 21, 1890, on the final accounting, should not be vacated, and why he should not pay to the mother, brother and sister of the intestate all of the proceeds of the estate.

It is true that the petition concludes with the prayer for such other and further relief, or both, as to the court should seem just and proper, and the order follows the prayer in the petition and required the administrator to show cause why the petitioner should not have such other and further relief in the premises as should be just and proper.

The petition contains no prayer pursuant to section 2685 for a decree revoking the letters, and the order granted thereon does not require the administrator to show cause why the letters should not be revoked. The order required the administrator to show cause according to the prayer of the petition, as required by sections 2685 and 2686, and there is no hint in the petition or in the order that the proceeding was instituted for the purpose of obtaining a decree revoking the letters of administration.

A proceeding to vacate letters of administration is authorized by section 2681, and a proceeding to vacate a final accounting is author ized by section 2481, and the reliefs which may be granted under these sections, in proceedings instituted pursuant to them, are not similar. The rule in Chancery was laid down in *Colton* v. *Ross* (2 Paige, 396) as follows: "Where the case made by the bill may entitle the complainant to one kind of relief or another, but not to both, the prayer should be in the disjunctive. So if the complainant is in doubt whether the facts of his case entitle him to a specific relief prayed for, or to relief in some other form, his prayer, concluding for general relief, should be in the disjunctive. And in such a case, although he is not entitled to the relief specifically prayed for, he may, under the general prayer, obtain any other specific relief, provided it is consistent with the case made by the bill. (Per Thompson, J., 1 Johns. 559; 13 Ves. Jun. 119; 1 Johns. Ch. 117; 2 Young & Jervis, 33; 2 Pet. 595.) But if a complainant prays for particular relief, *and* other relief in addition thereto, he can have no relief inconsistent with such particular relief, although founded upon the bill." (1 Dan. Ch. Pr. [3d Am. ed.] chap. 6, § 4, pp. 7 and 382, and cases there cited.) In case a petition contains facts entitling the petitioner to two dissimilar kinds of relief, and concludes with a prayer that he have one kind, *and* for such other and further relief, etc., and the citation issued on the petition

follows it with respect to the relief, no relief except that prayed for and such as is consistent therewith can be granted. The practice in courts of equity is peculiarly applicable to a proceeding to vacate letters of administration, because section 2742 provides that the jurisdiction of a Surrogate's Court to vacate letters must be executed in the manner prescribed by statute, and section 2685 provides that the prayer of the petition shall be for a decree revoking the letters, and section 2636 that a citation must be issued in accordance with the prayer of the petition. Under these proceedings, we think the Surrogate's Court was not authorized to vacate the letters, and that the part of the decree which assumes to grant that relief must be reversed.

Had the Surrogate's Court power to open the decree settling the final account without first revoking the letters? Section 2481 of the Code provides:

"A surrogate, in court or out of court, as the case requires, has power :   *   *   *

" 6. To open, vacate, modify or set aside, or to enter as of a former time, a decree or order of his court   *   *   *   for fraud, newly discovered evidence, clerical error or other sufficient cause."

The petition and the order to show cause are entirely sufficient to institute a proceeding to vacate the decree entered on the final accounting for " fraud   *   *   *   or other sufficient cause." The administrator in his verified petition for the final accounting alleged " That the only person interested in the estate of said decedent   *   *   *   as husband, next of kin or otherwise, together with their places of residence, are, to the best of your petitioner's knowledge, information and belief, as follows, to wit: William H. Patterson, the petitioner herein, the husband of deceased, who resides at No. 464 6th ave., New York city."

The court found that this allegation was false and that the petitioner was not the husband of the intestate and was not entitled to any share of her estate, and this finding we have affirmed. This was a sufficient cause for vacating the accounting for " fraud   *   *   *   or other sufficient cause." But it is urged in behalf of the administrator that because it was alleged in the petition for letters that the intestate and William H. Patterson were husband and wife, and letters were issued thereon to him, the Surrogate's

Court is concluded on the final accounting from adjudging that the fact is otherwise and that he was entitled to no part of the estate. This contention we do not think can be maintained.

To the end that a citation may be issued as provided by section 2728, an administrator, in his petition for a judicial settlement of his accounts, is required to state the names of creditors, of the next of kin, and the name of the husband or wife of the intestate. On the hearing "any party may contest the account with respect to a matter affecting his interest in the settlement and distribution of the estate." (§ 2728.)

Section 2743 provides: "Where an account is judicially settled, as prescribed in this article, and any part of the estate remains and is ready to be distributed to the creditors, legatees, next of kin, husband or wife of the decedent, or their assigns, the decree must direct the payment and distribution thereof to the persons so entitled, according to their respective rights. * * * Where the validity of a debt, claim or distributive share is not disputed or has been established, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same."

The appellant, in his petition for letters, alleged that he was the husband of the intestate and her only next of kin, and had the respondent appeared in the Surrogate's Court on the application for letters and contested his right on the ground that he was not the husband of the intestate, she would have been concluded from again litigating the question. (*Caujolle* v. *Ferrié*, 13 Wall. 465; Freem. Judg. § 319a.) But this she did not do, and no citation was issued requiring her to appear, and there is no evidence that she had notice of the application, and the question is presented whether, under such circumstances, she is bound by the adjudication made on issuing the letters. If the issue of marriage had been contested, or an opportunity had been given to the respondent to contest the question, the determination of the Surrogate's Court would have been conclusive upon her in a proceeding for distribution, but it is a principle of law too well settled to require the citation of authorities that no person can be deprived of his property without due process of law, and when a court decides a question adversely to the interest of a person who ought to have been a party to the action or pro-

ceeding, but was not, and is not a privy of a party, the judgment is not conclusive upon such person and he may attack the judgment collaterally. A familiar illustration arises in cases of partition, which are actions *quasi in rem*. In such a case if a person having a vested interest in the land is not made a party to the action, although it is alleged and proved on the trial that the persons who were parties were the owners of the entire title, the person who was not made a party may prove his title and recover his share of the land as against all the world. So in the case at bar the respondent, not being a party to the proceeding, or the privy of any person who was a party, is not concluded by the letters of administration, but was at liberty, under the sections of the Code and the authorities cited, to contest the question of marriage on the final accounting. (Van Fleet Coll. Attack, § 17.)

The rule contended for by the appellant would make it possible for a person not of kin to an intestate, by alleging in a petition for letters that he was the sole next of kin and entitled to administration, to obtain an adjudication that he was so related and thereby estop the true next of kin from questioning his right to the estate collaterally in an action or in a proceeding to compel distribution among those entitled to the estate.

It should be observed that in this case it was not asserted on the trial in the Surrogate's Court that the administrator had failed to account for all of the estate, or had in any way misapplied or misappropriated any part of it, except by claiming and receiving the net avails, and every interest will be protected by setting aside the accounting and permitting the surrogate to distribute the estate to those entitled.

That part of the decree vacating the letters of administration issued to William H. Patterson March 4, 1889, is reversed, and that part of it vacating the final accounting of March 21, 1890, is affirmed, without costs to either party, and the case is remitted to the Surrogate's Court that final distribution may be had among those entitled to the estate.

O'BRIEN and PARKER, JJ., concurred.

Decree reversed in so far as it vacates the letters of administration, and affirmed in so far as it vacates the final accounting, without costs to either party ; case remitted to Surrogate's Court.